IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:07-cr-00032-MR-4

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| DARIAN KENDALL ROBINSON, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 334]. The Defendant is represented by the Federal Public Defender for the Western District of North Carolina.

**I.     BACKGROUND**

During 2006 and 2007, the Defendant Darian Kendall Robinson participated in a drug-trafficking organization that distributed crack cocaine in Cleveland County, North Carolina. [Doc. 152: PSR at ¶¶ 7-16]. The Defendant sold more than 190 grams of crack cocaine to a confidential informant in January 2007. [Id. at ¶¶ 11-13]. One of the Defendant's co-conspirators reported buying ounce quantities of crack cocaine from the

Defendant, beginning in January 2006, and twice bought four and a half ounces of crack cocaine from the Defendant. [Id. at ¶ 15]. Another co-conspirator reported buying four and a half ounces of crack cocaine from the Defendant on three occasions. [Id.].

A federal grand jury indicted the Defendant and five co-defendants and charged them with conspiring to possess with intent to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Doc. 1: Indictment at 1-2]. The Government filed an information pursuant to 21 U.S.C. § 851, notifying the Defendant and this Court that it intended to seek an enhanced penalty based on the Defendant's prior conviction for a felony drug offense. [Doc. 57: Information]. The Defendant entered into a written plea agreement with the Government, agreeing to plead guilty to the drug trafficking conspiracy offense and stipulating that at least 150 but less than 500 grams of crack were reasonably foreseeable to him. [Doc. 79: Plea Agreement at ¶¶ 1, 6(a)].

The probation office prepared a Presentence Report ("PSR") in advance of sentencing. In the PSR, the probation officer calculated a base offense level of 32 based on the Defendant's responsibility for at least 150 but less than 500 grams of crack cocaine. [Doc. 152: PSR at ¶ 22]. Based on the Defendant's prior convictions for felony drug trafficking offenses, the

2

probation officer classified the Defendant as a career offender, which subjected him to an adjusted offense level of 37 and a total offense level of 34. [Id. at ¶¶ 28, 30]. Based on a total offense level of 34 and a criminal history category of VI, the probation officer calculated a Sentencing Guidelines range of between 262 and 327 months' imprisonment. [Id. at ¶ 82]. The Defendant also faced a statutory mandatory minimum term of 20 years in prison. [Id. at ¶ 81].

This Court sentenced the Defendant to 276 months' imprisonment, 22% above the low-end of the range advised by the Sentencing Guidelines. [Doc. 170: Judgment at 2; Doc. 335: Supp. PTO at 1].

The Defendant now seeks a reduction of his sentence pursuant to the First Step Act to a sentence of time served.[1] [Doc. 447]. The Government agrees that the Defendant is eligible for a reduction in his custodial sentence but requests that the Court deny his motion because his Guideline range was determined by his status as a career offender, not the drug quantity for which he was held responsible. [Doc. 336].

---

[1] As of November 3, 2020, the Defendant had a total of 180 months in credited time with BOP. [See Doc. 335 at 3].

3

## II. DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. 115-391. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010

4

(Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Defendant is eligible for relief under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition. See Gravatt, 953 F.3d at 263-64. His offense was committed before August 3, 2010; he was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Further, the Defendant's sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Having determined that the Defendant is eligible for relief under the First Step Act, the Court must next determine whether in its discretion any such relief should be afforded and, if so, to what extent. See United States v. Wirsing, 943 F.3d 175, 180 (4th Cir. 2020); First Step Act § 404(b), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

The Court begins its analysis with the calculation of the appropriate Guidelines range. Here, even if the Fair Sentencing Act had been in effect at the time the Defendant committed his offense, the Sentencing Guidelines

still would have advised a sentence of between 262 and 327 months' imprisonment because of his status as a career offender. See 21 U.S.C. § 841(b)(1)(B) (2004).

The Defendant argues that the Fourth Circuit's decisions in <u>United States v. Chambers</u>, 956 F.3d 667 (4th Cir. 2020), reh'g denied (July 8, 2020), and <u>United States v. Norman</u>, 935 F.3d 232 (4th Cir. 2019), require this Court to recalculate the Defendant's Guideline range without the career offender enhancement and consider whether to reduce his sentence based on the resulting Guideline range.[2]

In <u>Chambers</u>, the Court of Appeals held that, in considering whether to impose a reduced sentence under the First Step Act, a district court must consider any intervening caselaw that *retroactively* rendered the original Guidelines calculation erroneous. <u>Chambers</u>, 956 F.3d at 668 ("we now hold that any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing"). In <u>Chambers</u>, that required the application of <u>United

---

[2] Without the career offender enhancement, the Defendant contends that the stipulated drug weight would drive his Guidelines calculations, resulting in a base offense level of 30 and a total offense level of 27 after applying a three-level reduction for acceptance of responsibility. That offense level, combined with a criminal history category of V, produces a Guidelines range of 120 to 150 months.

States v. Simmons, 649 F.3d 237, 243 (4th Cir. 2011) (en banc), to Chambers, which rendered his career offender enhancement erroneous.

The Defendant argues that under Chambers, this Court should calculate the Guideline range without the career-offender enhancement because under Norman, the Defendant's federal drug trafficking conspiracy offense would not qualify as a career offender predicate. See Norman, 935 F.3d at 237 (holding that a drug-trafficking conspiracy proscribed by 21 U.S.C. § 846 is not a "controlled substance offense" under the career-offender guideline). However, Norman has not been deemed to apply retroactively. Therefore, Chambers does not require the recalculation of the Defendant's guideline range without the career offender enhancement. See United States v. Johnson, No. 7:04CR128, 2020 WL 2563541, at *5 (W.D. Va. May 19, 2020) (declining to reduce defendant's guideline range under Chambers and Norman when calculating guideline range under the First Step Act because Norman has not been made retroactively applicable on collateral review).

Having determined the appropriate Guidelines range, the Court now turns to the relevant § 3553(a) factors in order to determine whether a further reduction is warranted. Here, the Court finds that the Defendant's history and characteristics weigh against a sentence reduction. The Defendant's

criminal history includes three felony drug trafficking offenses. [Doc. 152: PSR at ¶¶ 35-36]. Additionally, the Defendant was on probation while he was selling large quantities of crack cocaine as part of the charged conspiracy. [Id. at ¶ 51]. Considering the Defendant's criminal history, the need to protect the public, and the need to deter the Defendant and others from engaging in similar crimes, this Court reasonably determined that a sentence of 276 months was warranted. That analysis remains sound.

The Defendant argues that the § 3553(a) factors support a reduced sentence to time served in order to avoid unwarranted sentencing disparities and to reward the Defendant for his post-sentencing rehabilitation.

First, with respect to unwarranted sentence disparities, the Defendant argues that a sentence above time served would create a disparity between him and other crack cocaine offenders who were originally sentenced based on drug weight instead of based on an "erroneous career offender enhancement." [Doc. 334 at 7]. This argument, however, is misplaced. While the Defendant may not have been classified as a career offender were he to be sentenced today, that does not change the fact that he was properly classified as a career offender at the time he was sentenced. The change in intervening law on which the Defendant relies to argue that his career offender designation was erroneous was not made retroactive and therefore

8

has no effect on either the validity of the Defendant's career offender designation or the validity of such designation being applied to any similarly situated defendant. Further, the Defendant's criminal history includes three prior drug trafficking convictions, thus distinguishing him from the run-of-the-mill defendant convicted of a drug trafficking offense whose Guideline range is governed solely by the drug trafficking guideline. To recalculate the Defendant's sentence without the career offender designation and to base his Guideline range solely on the drug weight involved would be to ignore the seriousness of his criminal history and would bestow on the Defendant a benefit that similarly situated defendants sentenced after the Fair Sentencing Act but before Norman did not and in fact could not receive.

The Defendant further argues that a sentence above time served creates an unwarranted sentencing disparity between him and other crack-cocaine offenders who were erroneously sentenced as career offenders but who have received reductions under the First Step Act. This argument, too, is misplaced. The offenders who have received reductions based on an improper classification as a career offender are those whose career offender classification was erroneous under Chambers, and that decision has been held to apply retroactively. Those offenders, however, could never have received a sentence of more than one year in prison for the offenses that

9

Simmons held were not "felony" offenses. Thus, those offenders face an entirely different situation than the one faced by the Defendant here.

Finally, the Defendant contends that his post-sentencing rehabilitation warrants a reduction to time served. The Fourth Circuit has held that, in considering whether to grant First Step relief, a court may consider any mitigating evidence presented by the Defendant, including any post-sentencing rehabilitation. United States v. Chambers, 956 F.3d 667, 675 (4th Cir. 2020), reh'g denied (July 8, 2020). Here, the Defendant has completed over 70 educational courses and work assignments while incarcerated. He also, however, has received six disciplinary citations, the two most recent of which were for fighting. Overall, the Defendant's post-sentencing conduct weighs against the exercise of this Court's discretion to reduce the Defendant's sentence.

For all these reasons, in the exercise of its discretion, the Court denies the Defendant's request for a reduction of his custodial sentence under the First Step Act. The Court will, however, reduce his term of supervised release to a term of eight years.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 334] is **GRANTED IN PART** and **DENIED IN PART**, and the Defendant's term of

term of supervised release is hereby reduced to a term of **eight (8) years**. All other terms and conditions of the Defendant's Judgment [Doc. 170] shall remain in full force and effect.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order.

The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: December 3, 2020

Martin Reidinger
Chief United States District Judge