# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CRIMINAL CASE NO. 1:07-cr-00032-MR-4

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| DARIAN KENDALL ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit for further consideration of the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 334] in light of the Fourth Circuit's decision in United States v. Lancaster, 997 F.3d 171 (4th Cir. 2021). [Doc. 346]. Also before the Court is the Defendant's Unopposed Motion for Expedited Reduction of Sentence under The First Step Act. [Doc. 347].

## I. BACKGROUND

During 2006 and 2007, the Defendant Darian Kendall Robinson participated in a drug-trafficking organization that distributed crack cocaine in Cleveland County, North Carolina. [Doc. 152: PSR at ¶¶ 7-16]. In 2007,

a federal grand jury indicted the Defendant and five others charging them with conspiring to possess with intent to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Doc. 1: Indictment at 1-2]. The Government filed an information pursuant to 21 U.S.C. § 851, notifying the Defendant and the Court that it intended to seek an enhanced penalty based on the Defendant's prior conviction for a felony drug offense. [Doc. 57: Information]. The Defendant entered into a written plea agreement with the Government, agreeing to plead guilty to the drug trafficking conspiracy offense and stipulating that at least 150 but less than 500 grams of crack cocaine were reasonably foreseeable to him. [Doc. 79: Plea Agreement at ¶¶ 1, 6(a)].

In preparation for sentencing, a Presentence Report (PSR) was prepared, detailing Robinson's role in the conspiracy as a distributor. Specifically, it was noted that in January 2007, the Defendant sold more than 190 grams of crack cocaine during the course of two controlled drug purchases by a confidential informant. [Doc. 152: PSR at ¶¶ 12-13]. Additionally, the Defendant's co-conspirators reported five transactions wherein they purchased an additional 630 grams of crack cocaine from the

Defendant.[1]  [Id. at ¶ 15].  Based on these drug amounts, the PSR noted that the Defendant appeared to be responsible for more than 500 grams of crack cocaine, as these seven transactions alone account for 820 grams.  [Id. at ¶ 16].  In keeping with the terms of the Plea Agreement, however, the probation officer calculated the Defendant's base offense level to be 32, based upon the parties' stipulation that the Defendant was responsible for at least 150 grams but less than 500 grams of crack cocaine.  [Id.].  Based on his criminal history, the Defendant was determined to be a career offender, thus subjecting him to an advisory Guidelines range of between 262 and 327 months' imprisonment.[2]  [Doc. 152: PSR at ¶ 82.  In light of the § 851 enhancement, the Defendant also faced a statutory mandatory minimum term of 20 years in prison.  [Id. at ¶ 81].  In 2008, this Court[3] sentenced the Defendant to 276 months' imprisonment, within the advisory Guidelines

---

[1] While the Defendant initially objected to these findings in the PSR, such objections were ultimately withdrawn [see Doc. 152: PSR at 21], and the Defendant did not contest these transactions or these drug amounts at sentencing.

[2] If the career offender enhancement had not applied at the time of the Defendant's sentencing his Guidelines range (GLR) based on the agreed drug quantities would have called for a term of imprisonment between 140 and 175 months.  Based on the drug quantities as set forth in the PSR, the GLR would have been 168 to 210 months.  In light of the § 851 enhancement, however, both of these would have been increased to the statutory minimum sentence of 240 months per USSG § 5G1.1.

[3] The Honorable Lacy H. Thornburg, United States District Judge, presiding.  Upon Judge Thornburg's retirement, this matter was reassigned to the undersigned.

3

range but between the low-end and the middle of the range. [Doc. 170: Judgment at 2; Doc. 335: Supp. PTO at 1].

In 2010, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, which increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, Section 2 of the Act raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act. Likewise, the Defendant was ineligible for relief pursuant to the retroactive Guidelines amendments 706, 750 and 782 because of his career offender status.

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, was enacted. Section 404 of the Act gave retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. The Defendant sought a reduction of his sentence pursuant to Section 404 the First Step Act to a sentence of time served.[4] [Doc. 334]. The Government

---

[4] As of November 3, 2020, the Defendant had a total of 180 months in credited time with BOP. [See Doc. 335 at 3].

4

agreed that the Defendant was eligible for a reduction in his custodial sentence but requested that the Court deny his motion because his Guidelines range was determined by his status as a career offender, not the drug quantity for which he was held responsible.  [Doc. 336].

The Fair Sentencing Act only increased the threshold quantities of crack cocaine for sentencing treatment under § 841(b)(1)(A) and (B).  The Defendant was in the top category both before and after this amendment. As such, the Defendant's argument is not actually based on a retroactive application of the Fair Sentencing Act, but rather on a challenge to his career offender designation.   The Defendant argues that he was not properly classified as a career offender in light of United States v. Norman, 935 F.3d 232 (4th Cir. 2019) (holding that an § 846 conspiracy conviction was not a controlled substance offense within the meaning of the Guidelines and can no longer serve as a career offender predicate).  In December 2020, this Court found that the Defendant was eligible for a reduced sentence under the First Step Act but concluded that the Defendant remained subject to the same Guidelines range based on the career offender enhancement.  [Doc. 338]. Specifically, the Court rejected the Defendant's argument under Norman, noting that Norman had not been deemed to apply retroactively and thus, the Court was not required to recalculate his Guidelines range without

5

the career offender enhancement.  [Id. at 7].  The Court did so, in part, based on the Fourth Circuit's decision in United States v. Chambers, 956 F.3d 667 (4th Cir. 2020) which held that any "Guidelines error *deemed retroactive* . . . must be corrected in a First Step Act resentencing."  Id. at 668 (emphasis added).  Accordingly, while the Court reduced the Defendant's term of supervised release from ten years to eight years, it denied the Defendant's request for a reduction in his term of incarceration.  [Id.].

The Defendant appealed.  [Doc. 341].  The Fourth Circuit held the Defendant's appeal in abeyance pending its decision in United States v. Lancaster, No. 20-6571.  The Fourth Circuit issued its decision in Lancaster on May 7, 2021, holding that the district court was required in a First Step proceeding to recalculate the Guidelines range in light of Norman.  In Lancaster, the Fourth Circuit noted that even though a § 846 conspiracy conviction "was considered to be a controlled substance offense [at the time of Lancaster's sentencing], that is no longer the case." United States v. Lancaster, 997 F.3d 171, 176 (4th Cir. 2021).  Without the controlled substances offense predicate, the career offender enhancement was no longer applicable and thus no longer determined the Guidelines range.  Id.

On May 26, 2021, the Fourth Circuit granted the Defendant's motion for remand (which the Government did not oppose), vacated this Court's

prior Order, and remanded for further proceedings in light of <u>Lancaster</u>. [Doc. 346]. The Fourth Circuit's mandate issued on June 1, 2021. [Doc. 348].

On June 2, 2021, the Defendant filed an unopposed motion for an expedited reduction of his sentence under the First Step Act to a sentence of time served. [Doc. 347].

## II. DISCUSSION

Section 404 of the First Step Act authorizes district courts to "impose a reduced sentence" for certain "covered offense[s]." First Step Act, § 404(b), 132 Stat. at 5222. Section 404(a) of the Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." <u>Id.</u> § 404(a). Section 404(b) then provides that the court "may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." <u>Id.</u> § 404(b). The First Step Act makes clear, however, that any such decision is a matter of the court's discretion. <u>Id.</u> § 404(b), (c).

When presented with a motion for relief under Section 404 of the First Step Act, a district court must determine whether the sentence qualifies for

7

review on the merits.  United States v. Gravatt, 953 F.3d 258, 262 (4th Cir. 2020).  Here, the Defendant undoubtedly qualifies for review:  1) he was sentenced for a violation of §§ 846 and 841(b)(1)(A) for conspiring to possess with intent to distribute cocaine base, which is an offense for which the statutory penalties were modified by the Fair Sentencing Act; 2) his motion for a reduction in sentence is addressed to the court that imposed the sentence; and 3) the sentence has not been previously reduced under the First Step Act.

Having determined that the Defendant's sentence qualifies for review on the merits, the Court must now determine whether to exercise its discretion to impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed.  First Step Act, § 404(b), 132 Stat. at 5222.  "The stated policy governing the exercise of this discretion is to bring a sentence that is qualified for reduction 'in line' with a sentence that the court would have imposed under the Fair Sentencing Act had it been in effect."  United States v. Lancaster, 997 F.3d 171, 175 (4th Cir. 2021).

The Court must begin its analysis with the calculation of the appropriate Guidelines range and a "brief reconsideration" of the 18 U.S.C. § 3553(a) factors.  Lancaster, 997 F.3d at 175.  In calculating the Guidelines

8

range, the Court "must *correct* any original Guidelines errors and apply intervening case law made retroactive to the original sentence." United States v. Collington, 995 F.3d 347, 355 (4th Cir. 2021) (emphasis in original). In considering the § 3553(a) factors, the Court may consider relevant post-sentencing conduct, such as any disciplinary infractions incurred or rehabilitative efforts undertaken while the Defendant was incarcerated. Lancaster, 997 F.3d at 175; United States v. White, 984 F.3d 76, 90 (4th Cir. 2020). The Fourth Circuit has stressed that this process is not a "plenary resentencing," nor is it "intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors." Lancaster, 997 F.3d at 175; Collington, 995 F.3d at 358 ("the First Step Act contemplates a robust resentencing analysis, albeit not a plenary resentencing"). Rather, as the Fourth Circuit has explained:

> the scope of the analysis is defined by the gaps left from the original sentencing to enable the court to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances. If, after conducting the analysis, the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated.

Lancaster, 997 F.3d at 175 (emphasis added). Even though this is not a plenary resentencing, however, this proceeding must still be both procedurally and substantively reasonable. Collington, 995 F.3d at 360.

The instructions in Lancaster and Collington as to the manner of fulfilling the objective of the First Step Act would appear to be contradictory. On the one hand, the task before the Court "is to bring a sentence that is qualified for reduction 'in line' with a sentence that the court would have imposed under the Fair Sentencing Act had it been in effect." Lancaster, 997 F.3d at 175. On the other hand, "the court is to determine what sentence it would have imposed under the Fair Sentencing Act *in light of intervening circumstances*." Id. (emphasis added). These edicts beg the question as to whether the Court is to apply the benefits of *only* the Fair Sentencing Act to those made eligible by the First Step Act, or whether the Court is called upon to also grant all benefits that arise from all intervening changes in the law – but only to that limited group of prisoners made eligible by the First Step Act. The holding in Lancaster provides an answer: in order to effectuate the former, a Court should *take into account all* of the latter. While the former may express the general intent of the First Step Act, the latter sets forth how the Fourth Circuit has determined that such intent is to be implemented. This distinction is of paramount importance to the Defendant herein. As set forth

10

above, the Fair Sentencing Act afforded the Defendant nothing. He was in the highest crack cocaine quantity category both before and after the adoption of the Fair Sentencing Act. It is only because of the expansion of the factors to be considered as set forth in Lancaster that the Defendant can make his present argument.

Therefore, based on Lancaster, once a defendant is determined to be eligible for relief under the First Step Act, the Court then must calculate the appropriate advisory Guidelines range, applying all intervening changes in the law[5] that would affect such calculation, regardless of whether or not such changes have been deemed to be retroactive. Once the Court has calculated the appropriate advisory Guidelines range, the Court also must consider whether the analysis under § 3553(a) has changed since the Defendant's sentencing, and if so, how; in so doing, the Court may consider the Defendant's (and Government's) arguments regarding each of these factors. Otherwise, the Court must leave any prior sentencing-related determinations alone. Then the Court may consider the Defendant's post-sentencing conduct, both positive and negative. Ultimately, the Court must

---

[5] Such "changes in the law" include not only intervening case law, but also subsequent amendments to the Guidelines, such as Amendment 782, from which the Defendant did not receive any benefit at the time of its passage due to his status as a career offender. [See Doc. 326].

then distill from all of this analysis whether a reduced sentence should be imposed and, if so, to what degree.  Id.

Notwithstanding the complexity required by this process, this is not a plenary resentencing.  Therefore, no hearing is required.  Collington, 995 F.3d at 358; United States v. Ray, 483 F. Supp. 3d 375, 376 (N.D. W. Va. 2020).  As a result, the input of counsel is rather limited, and the Defendant is not given an opportunity to return to the Court for a further allocution.

Having set out the proper procedure to be applied in analyzing a First Step Act request, and having already determined that the Defendant is eligible for relief under the First Step Act, the Court now turns to the calculation of the Defendant's revised advisory Guidelines range.

In previously addressing the Defendant's request for relief, this Court declined to reconsider the Defendant's career offender designation in light of Norman, reasoning that Norman had not been deemed to apply retroactively. In so holding, this Court relied upon United States v. Chambers, in which the Fourth Circuit stated that "any Guidelines error *deemed retroactive* . . . must be corrected in a First Step resentencing."  956 F.3d 667, 668 (4th Cir. 2020). In that case, the Court of Appeals had focused on the retroactivity of the intervening change in the law.  Id. at 672-73 ("First and foremost, unlike the Simmons error in this case, the intervening Fifth Circuit case that would have

removed Hegwood's career-offender enhancement has not been declared retroactive.").[6]  The Court of Appeals, however vacated this Court's Order in light of its recent decision in <u>Lancaster</u>.  In that case, the Court of Appeals concluded that, notwithstanding the Court of Appeals' apparent emphasis on the retroactive nature of the Guidelines error to be corrected, <u>Chambers</u> requires the recalculation of a defendant's advisory Guidelines range in light of *all* "intervening case law," whether or not such law has been deemed retroactively applicable.   <u>See</u> <u>Lancaster</u>, 997 F.3d at 175.

The Court therefore will endeavor to calculate the Defendant's Guidelines range in light of the intervening changes in the law that have occurred since the Defendant's sentencing on June 25, 2008.  A threshold issue in this analysis is whether the Defendant qualifies as a career offender under U.S.S.G. § 4B1.1.  The Fourth Circuit's <u>Norman</u> decision would seem to indicate that he does not.   The Defendant's count of conviction is for conspiracy to possess with intent to distribute cocaine base pursuant to 21 U.S.C. §§ 841 and 846.  The Court in <u>Norman</u> held that an § 846 conspiracy conviction is not a "controlled substance offense" as defined by U.S.S.G. §

---

[6] <u>See also</u> <u>Collington</u>, 995 F.3d at 355 ("district courts must correct original Guidelines errors and apply intervening case law *made retroactive* to the original sentence." (emphasis added)).

4B1.2(b).[7]  935 F.3d at 238.  To be deemed a career offender, a defendant

must be convicted of a controlled substance offense and have at least two

prior convictions for controlled substance offenses of violent felonies.

U.S.S.G. § 4B1.2.

In proceeding through the complex and detailed analysis required by

Lancaster, the Court takes note of the fact that this case is very different from

Norman.  In Norman, the defendant was convicted of possession with intent

_____

[7] Section 4B1.2 of the Guidelines defines a controlled substance offense as "an offense
under federal or state law, punishable by imprisonment for a term exceeding one year,
that prohibits the manufacture, import, export, distribution, or dispensing of a controlled
substance (or a counterfeit substance) or the possession of a controlled substance (or a
counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."
U.S.S.G. § 4B1.2(b).  Application Note 1 of the commentary clarifies that "controlled
substance offenses" "include the offenses of aiding and abetting, *conspiring*, and
attempting to commit such offenses."  U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added).
Notwithstanding the wording of this provision, the Court in Norman held that a drug
conspiracy conviction under § 846 is not a "controlled substance offense."  This
interpretation of § 4B1.2 is interesting in light of the fact that this section expressly states
that "the term 'controlled substance offense' means an offense under federal . . . law . . .
that prohibits . . . the possession of a controlled substance . . . with the intent to . . .
distribute . . ." and "include[s] the offense[ ] of . . . conspiring . . . to commit such offense[]"
USSG § 4B1.2 and n.1.  That defines only one crime: a violation of § 846.  Yet the Court
in Norman proceeded through a complex categorical analysis to hold that this category
of one is actually a category of none.  For this reason, other courts of appeal have held
that the plain text of U.S.S.G. § 4B1.2, as further defined by Application Note 1, includes
§ 846 drug conspiracies.  See United States v. Lewis, 963 F.3d 16, 24 (1st Cir. 2020),
cert. denied, No. 20-7387, 2021 WL 2519339 (U.S. June 21, 2021); United States v. Tabb,
949 F.3d 81, 87 (2d Cir. 2020), cert. denied, No. 20-579, 2021 WL 2519097 (U.S. June
21, 2021).  As such, the Fourth Circuit's holding in Norman would appear to represent a
departure from ordinary textualism.  It is also a clear departure from the Circuit's own
precedent.  See Norman, 935 F.3d at 242-43 (King, J. concurring in part and dissenting
in part) (noting that in United States v. Kennedy, 32 F.3d 876 (4th Cir. 1994), the Fourth
Circuit held that § 846 is a controlled substance offense, a holding which the Norman
majority referred to merely as an "assumption").  Nevertheless, Norman constitutes
binding precedent, and the Court is obliged to follow it.

to distribute heroin and cocaine (not conspiracy). His count of conviction came within § 4B1.2. The Court of Appeals was tasked with determining whether the defendant's *prior* drug conspiracy convictions qualified as career offender *predicates*, applying the categorical approach. As such, the Court in <u>Norman</u> examined only the elements of the defendant's predicate convictions. Here, however, it is undisputed that the Defendant has valid career offender predicates. The Court of Appeals remanded this case for further consideration in light of <u>Norman</u> even though the Defendant's *count of conviction* in this case was for conspiracy to distribute crack cocaine under § 846, rather than for distributing or possessing with the intent to distribute crack cocaine under § 841. The Defendant's offense conduct, however, remains before the Court, and that conduct is *central* to the determination of an appropriate sentence. 18 U.S.C. § 3553(a). As such, this involves the examination of the *facts* of the Defendant's acts in *this* case, rather than the *elements* of the Defendant's convictions in prior cases.

The Defendant's undisputed offense conduct, as set out in the PSR, involved at least seven distinct acts of distribution of cocaine base by the Defendant, including two separate controlled buys coordinated by law enforcement. Had the Defendant been charged for those acts of distribution, there would be no question that the Defendant would have qualified as a

career offender at the time of sentencing, and would still qualify as such, even after Norman. But the United States Attorney chose not to charge the Defendant with his seven separate counts of distribution, and instead chose to charge him for that conduct cumulatively as a conspirator with others for his acts of distribution.[8] Even though the circumstances in this case would call into question whether Norman should play a substantial role in the sentencing calculus, the remand by the Court of Appeals in light of Lancaster (applying Norman in the First Step Act context) indicates that it, at least, requires that the Guidelines range be recalculated in light of the limitations of Norman, for whatever advice such recalculation may provide to the Court. Therefore, the Court takes the remand of this matter to indicate that the Defendant's Guidelines range must be calculated without the career offender enhancement and based on drug quantity alone.

---

[8] It is purely by happenstance—and due to intervening changes in the law that were completely unforeseen at the Government at the time—that the Defendant was not charged for his acts of distribution and can now make the argument that he is not a career offender because he was not charged with a "controlled substance offense." The wide disparity between the Guidelines range of 120 to 150 months and 262 to 327 months, based *solely* on the manner in which the United States Attorney chose to charge the very same facts, underscores the constitutional truth articulated in Booker that the tailoring of individualized sentences must be viewed as a judicial act, as opposed to a prosecutorial or executive act. See generally United States v. Booker, 543 U.S. 220, 245 (2005). Therefore, the incidental effect of the executive's charging decision should be a less significant factor in formulating the revised sentence under the Lancaster paradigm, particularly considering that the charging decision was made without the ability to predict that the Court of Appeals would change the law, retroactively, eleven years later.

16

The offense conduct outlined in the PSR refers to specific transactions wherein the Defendant sold crack cocaine in excess of 820 grams. [See Doc. 152: PSR at ¶¶ 13, 15]. The PSR, however, as accepted by the sentencing court, stated: "Although the evidence reveals the defendant's responsibility for in excess of 500 grams of crack cocaine, in keeping with the plea agreement, the defendant is only held responsible for at least 150 grams but less than 500 grams of cocaine base." [Id. at ¶16]. In light of the parties' stipulation in the Plea Agreement, this determination is, therefore, left undisturbed.[9] However, since the drug quantity is now significant to the calculation of the Guidelines range, the Court will distill from this prior determination that the Defendant is responsible for the quantity at the top end of this 150- to 500-gram range. The Defendant does not dispute that this translates to a Base Offense Level of 30, and after the adjustment for acceptance of responsibility, the Defendant's Total Offense Level is 27. [See Doc. 334 at 11].

---

[9] Since the prior career offender determination made the drug quantity calculation irrelevant in the original sentencing, the Court recognizes that the actual drug quantity for which the Defendant can be held responsible could be considered a "gap that needs to be filled to calculate an appropriate Guidelines range," as dictated by the Court in Lancaster. 997 F.3d at 176. However, the Guidelines range would be the same whether the Defendant is responsible for 500 grams or 820 grams. See U.S.S.G. 2D1.1(c)(5).

The Defendant's career offender designation affected not only his Total Offense Level calculation, but also the calculation of his Criminal History Category. Therefore, eliminating the career offender factor in the criminal history calculation yields a Criminal History Category of V, rather than VI. [See Doc. 152: PSR at ¶ 52]. Based on a Total Offense Level of 27 and a Criminal History Category of V, the Court concludes that, taking into account all proper intervening factors, the Defendant's advisory Guidelines range calls for a term of incarceration between 120 and 150 months. This constitutes a 54% reduction in the Guidelines range based on the very technical semantic analysis of Norman, coupled with the complex construction of the First Step Act as expressed in Chambers, Collington, and Lancaster.[10]

For purposes of comparison, the retroactive application of Norman, standing alone, is responsible for almost all of this reduction. If Norman had applied at the Defendant's original sentencing in 2008, his Guidelines range would have been 140 to 175 months rather than 262 to 327. The application

_____

[10] It is also dependent upon the Government's initial charging decision, which almost certainly would have been different had the United States Attorney foreseen the changes in the law over the following thirteen years.

18

of the subsequent retroactive Guidelines Amendments (particularly 782) only reduced it further from 140-175 to 120-150. Applying only the Fair Sentencing Act, as the language of the First Step Act would seem to indicate should be done, does not cause *any* reduction at all.[11]

Based upon the advisory Guidelines range calculated above, the Defendant urges this Court to apply this Guidelines range and impose a sentence of time served, as the Defendant has now served in excess of the 150-month high end of the recalculated Guidelines range. [See Doc. 347]. But the Defendant's argument calls for something akin to a mechanical recalculation of a sentence pursuant to U.S.S.G. § 1B1.10 when applying a retroactive amendment to the Guidelines. As the Court has previously noted, a non-plenary resentencing under the First Step Act requires more than such a mechanical application of the recalculated Guidelines range. See Collington, 995 F.3d at 355 (setting forth three-step process); Chambers, 956 F.3d at 672 (the provision of § 404(b) of the First Step Act allowing a court to "impose a reduced sentence" does not "suggest a mechanical application of the Fair Sentencing Act."). If a reduced sentence is to be imposed, it must be both procedurally and substantively reasonable.

---

[11] See Doc. 338.

Collington, 995 F.3d at 360. These are not considerations in the §1B1.10 application that the Defendant appears to advocate. Substantive reasonableness compels the Court to examine what sentence is appropriate, considering this significant recalculation of the Defendant's Guidelines range, along with his overall offense conduct and his criminal history in light of the § 3553(a) factors as a whole, as well as any relevant post-sentencing conduct. After all, as the Fourth Circuit explained in Collington, it is the responsibility of the Court to *impose* a new sentence on the Defendant, not merely to modify or reduce the sentence. 995 F.3d at 354; see also, Chambers, 956 F.3d at 672. This reasonableness analysis calls for a fresh look at the factors before the Court.

The first factor for the Court to consider is whether the recalculated Guidelines range provides adequate guidance to the Court in fashioning the appropriate sentence. After all, the Guidelines exist to "advise sentencing courts how to exercise their discretion within the bounds established by Congress." Beckles v. United States, 137 S. Ct. 886, 895 (2017). Here, the Defendant is subject to an advisory Guidelines range of 120 to 150 months merely by virtue of a discretionary charging decision, that was made without the prosecutor knowing what the potential ramifications of that decision would be years later. Had the Defendant been charged in a slightly different

20

manner, based on precisely the same offense conduct, his advisory Guidelines range would today be significantly higher: 262 to 327 months.

The great disparity in these sentencing ranges, resulting from the technical disqualification of the Defendant as a career offender based on the manner in which his distribution crimes were charged, causes the Court to question whether either Guidelines range is of much value in fashioning an appropriate sentence.  As such, this situation is comparable to the concept of an "imperfect departure," where a different sentencing range would apply if all the elements of a formal departure were met, but the set of facts before the Court falls slightly short of all the elements, and thus such an alternate calculation can provide advice for a variance.  The magnitude of such imperfect departure depends on how close the facts come to fulfilling all the necessary elements.[12]

This is particularly true in the context of a re-evaluation of a sentence in accord with the First Step Act.  Section 404(b) of the First Step Act directs

---

[12] The concept of an imperfect departure is the progeny of <u>Booker</u>.  Where before <u>Booker</u> all the elements of a departure had to be met in order to affect sentencing at all, in the post-<u>Booker</u> world the Court is empowered to consider such sentencing factors even when less than all the elements for such departure are present, and to grant a variance. The Court notes that imperfect departures most often apply in order to grant *downward* variances.  The concept, however, is equally applicable to upward variances in the appropriate circumstances.

that the lodestar of the proceeding is to "impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed."  First Step Act, § 404(b), 132 Stat. at 5222.  The Fair Sentencing Act, however, provides this Defendant nothing, other than a foot in the door to have his sentence reviewed.  The only basis for imposing a reduced sentence arises from *other* factors, particularly from Norman, which was decided eleven years after the Defendant's sentencing, and nine years after the Fair Sentencing Act was enacted.  But, as the Court already has determined, the Defendant has his foot in that door and thus is eligible for a sentence reduction.  And, in accordance with Lancaster, the Court must consider all intervening case law in recalculating the Defendant's sentencing range.[13]

_____

[13] There is a significant Circuit split on this issue.  Like the Fourth Circuit, the Third and Tenth Circuits have held that the application of intervening case law is required in recalculating a defendant's Guideline range.  See United States v. Murphy, 998 F.3d 549, 557 (3d Cir. 2021) (stating that an "accurate calculation necessarily includes a correct determination of whether the defendant is a career offender at that time," taking into account intervening changes in the law); United States v. Brown, 974 F.3d 1137, 1144 (10th Cir. 2020) (stating that "[t]he court can only make the Fair Sentencing Act retroactive and cannot consider new law," but nevertheless requiring recalculation of the defendant's Guideline range based on a subsequent judicial decision because the decision "was not an amendment to the law between Mr. Brown's original sentencing and his First Step Act sentencing; it was a clarification of what the law always was").  The First, Second, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits, however, have each held that a district court is not required to apply subsequent judicial decisions when recalculating a defendant's guideline range under the First Step Act.  See United States v. Concepcion, 991 F.3d 279, 292 (1st Cir. 2021), petition for cert. filed May 26, 2021; United States v. Moore, 975

In examining the weight to be given to this factor and the influence of these greatly disparate sentencing ranges, the Court must consider the § 3553(a) factor of avoiding unwarranted sentencing disparities.  After all, a defendant sentenced on the same day as the present Defendant for a conspiracy to distribute methamphetamine or heroin receives *no* benefit from Norman, because he is not eligible for First Step Act relief.  Likewise, a defendant convicted of participating in a conspiracy to distribute cocaine base that occurred in September 2010 (the month after the adoption of the Fair Sentencing Act) would be ineligible for any relief based on Norman, even though a defendant committing this same offense in July 2010 would be eligible.  In the same vein, a defendant with a pre-2010 conspiracy to distribute cocaine base for whom no drug quantity was alleged in the indictment would not be eligible for First Step Act relief and thus would derive no benefit from Norman either.  See Terry v. United States, -- U.S. --, 141 S. Ct. 1858, 1864 (2021) (holding that offender convicted under § 841(b)(1)(C)

---

F.3d 84, 92 (2d Cir. 2020); United States v. Hegwood, 934 F.3d 414, 419 (5th Cir.), cert. denied, 140 S. Ct. 285 (2019); United States v. Foreman, 958 F.3d 506, 516-17 (6th Cir. 2020); United States v. Fowowe, -- F. 4th --, 2021 WL 2450405, at *6 (7th Cir. June 16, 2021); United States v. Kelley, 962 F.3d 470, 479 (9th Cir. 2020), cert. denied, __ S. Ct. __, 2021 WL 2637994 (June 28, 2021); United States v. Taylor, 982 F.3d 1295, 1302 (11th Cir. 2020).

is not eligible for a sentence reduction under the First Step Act).[14]  The Fair

Sentencing Act and the First Step Act were designed to correct a disparity

between the treatment of crack cocaine defendants and other drug

defendants, not to create the opposite disparity, or to grant a windfall to crack

cocaine defendants.  In light of these considerations, the Court concludes

that Norman, in calling for a revised Guidelines calculation, simply provides

a lens through which the Court should view the offense conduct, the

Defendant's background, and the other § 3553(a) factors.  The technical

Guidelines range calculated in accord with Norman provides the Court with

relatively little guidance because it runs so far afield of the broader

sentencing considerations of § 3553(a).

The nature and circumstances of the Defendant's offense conduct fulfill

all the elements for career offender treatment.  It is undisputed that his

offense conduct includes a "controlled substance offense," even though a

United States Attorney, lacking clairvoyance, did not charge it in a manner

that remains a controlled substance offense after Norman.  The Defendant's

---

[14] It is noted that if the Court were to impose a reduced sentence as requested by the Defendant, the magnitude of that reduction would bring the Defendant much closer to the sentences ultimately imposed on his co-defendants.  These co-defendants, however, had offense conduct of a much lower level of culpability than the Defendant.  Thus, imposing the reduction requested by the Defendant would create an unwarranted sentencing *similarity* that would run afoul of 28 U.S.C. § 3553(a)(6).

criminal history indisputably includes the necessary career offender predicates. To the extent that the scheme underlying the United States Sentencing Guidelines attempts to assess a Guidelines range based on the offense conduct (Total Offense Level) and criminal history (Criminal History Category), the career offender Guidelines range continues to be at least somewhat instructive in formulating an appropriate sentence in this case, even though that Guidelines range may no longer technically apply. The appropriateness of this approach is underscored by the fact that so many other defendants situated similarly to the Defendant herein would remain subject to the career offender guideline, and allowing for an extraordinary reduction based on such arbitrary factors would create major unwarranted sentencing disparities.[15]

The Court sees the Defendant's argument as somewhat inconsistent with Booker. In all post-Booker sentencings the Court is directed to consult

---

[15] This approach is also supported by Beckles v. United States, 137 S. Ct. 886 (2017). The issue in Beckles was whether the Sentencing Guidelines' definition of "crime of violence," as it pertains to a career offender determination, was subject to a vagueness challenge under the Due Process Clause. The Court held it was not, noting that in Johnson v. United States, 576 U.S. 591 (2015), the Court had applied the vagueness rule to a statute (the Armed Career Criminal Act) which fixed permissible sentences. Id. at 893. By contrast, the Court noted, "the advisory Guidelines do not fix the permissible range of sentences. To the contrary, *they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range*." Id. at 892 (emphasis added). As the Supreme Court recognized in Beckles, sentencing is more of an exercise in common sense than rigid rule-following.

the Guidelines, but then make a judicial decision regarding the appropriate sentence based on the § 3553(a) factors. The Defendant's offense conduct and criminal history have not changed, nor have the Defendant's other pre-offense history and characteristics or the circumstance surrounding his criminal activities. All that has changed is that the Defendant has exhibited some rehabilitation, the adoption of the Fair Sentencing Act has embraced a view that crack cocaine offenses should be treated with a little bit more leniency, and the First Step Act has allowed the Defendant a re-examination of his sentence. The legal landscape as it pertains to the Defendant has changed relatively little, as far as the § 3553(a) factors are concerned, but the Defendant advocates for a sentence based on the Guidelines range that has been lowered by 54%. That should cause one to pause and consider whether this makes any sense.

To the extent that the Fair Sentencing Act advises that crack cocaine crimes should be viewed as being less serious than they formerly were, the Court notes that the quantity of crack for which the Defendant is responsible would have had, at most, a 20-month impact on the low end of his Guidelines range. As such, the § 3553(a) factor of reconsidering the seriousness of the Defendant's offense offers relatively little support for a significant reduction.

This, however, is not the end of the analysis. The Court is also required to take into account any post-sentencing rehabilitation by the Defendant. See United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 397 (4th Cir. 2019). In this regard, the law calls upon the Court to serve as a *de facto* one-person parole board, without the benefit of having the Defendant appear and demonstrate his rehabilitation. Instead, the Court has received a very limited paper presentation by the Defendant (and nothing from the Government) from which the Court must now decide the significance of this important factor.

The issue of post-sentencing rehabilitation is a factor to which the Court gave admittedly short shrift when this matter was previously before the Court. Initially, the Defendant and the Government focused on the issue of whether the applicable Guidelines range changed in light of intervening, non-retroactive case law. Therefore, the Court likewise focused on this Guidelines issue rather than the Defendant's rehabilitation. This time, proceeding through each stage of the Lancaster procedural paradigm, the Court finds this factor to be of greater significance. Even though counsel devoted only a few short lines to this issue in his brief (and the Government provided nothing), defense counsel attached his Summary Reentry Plan-

Progress Report from BOP to his motion.[16] [Doc. 334-2]. That document shows that the Defendant has had only three infractions in the past decade, while in that same period, he has completed a prodigious number of diverse programs. Moreover, the Defendant has received good work performance evaluations and has maintained regular details. All of this indicates significant rehabilitative efforts on the part of the Defendant.

Lastly, the Court must take into account the Defendant's mandatory minimum sentence and his statutory sentencing range. The Government filed a notice pursuant to 21 U.S.C. § 851, which has never been withdrawn. At the time of the Defendant's original sentence this called for a statutory sentencing range of twenty years to life. This, however, has been reduced to ten years to life. Thus, the Defendant is eligible for his sentence to be reduced below the former 240-month minimum.

In summary, the Defendant is eligible for a re-examination of his sentence under the First Step Act of 2018. His Guidelines range now, considering all intervening changes in the law, indicates a term of imprisonment between 120 and 150 months. However, the *offense conduct* considered by the sentencing court, analyzed "as if Section 2 or 3 of the Fair

---

[16] The Defendant did not submit this with his original motion.

28

Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed" would more likely indicate an advisory range of 262 to 327 months. This strongly influences the Court's application of the § 3553(a) factors. The Defendant's significant and serious offense conduct, which is unchanged from his original sentence, combined with the necessity of providing specific and general deterrence for the distribution of dangerous controlled substances, call for a sentence relatively close to the one originally imposed. Of considerable importance in this analysis is the need to avoid unwarranted sentencing disparities between this Defendant's new sentence and others very similarly situated, such as other defendants with precisely the same offense conduct but who were charged with distribution rather than conspiracy; crack cocaine career offenders whose offenses post-date the enactment of the Fair Sentencing Act of 2010 but pre-date Norman; and defendants convicted under this statute for conspiracy to distribute drugs other than crack cocaine. The only factor the Defendant argues—other than the technical change in the Guidelines range—is his behavior during incarceration, which indicates a significant level of rehabilitation, and therefore should be taken into account. Considering all of these factors as well as everything advocated by the Defendant, the Court determines that the Fair Sentencing Act advises that the Defendant's overall conduct, history,

and background should be viewed as slightly less serious than it was at the time of his sentencing and thus warrants some reduction. In addition, the Defendant's rehabilitative efforts during his time of incarceration warrant some reduction as well. Taking all these factors into account, the Court in its discretion imposes a reduced sentence of 216 months.[17]

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 334] and the Defendant's Unopposed Motion for Expedited Reduction of Sentence under The First Step Act [Doc. 347] are **GRANTED IN PART**, and the Defendant's term of imprisonment is **REDUCED** to a sentence of **TWO HUNDRED SIXTEEN (216) MONTHS**. The Defendant's term of supervised release was previously reduced to a term of eight (8) years. All other terms and conditions of the Defendant's Judgment [Doc. 170], as previously amended [Doc. 339], shall remain in full force and effect.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order.

The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United

---

[17] This represents a reduction in the Defendant's sentence of 60 months from that originally imposed.

States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: August 23, 2021

Martin Reidinger
Chief United States District Judge